## CHESWELL *v.* EASTHAM.

The acts and words of a party before signing and sealing a deed, may be given in evidence to show that by a manual tradition of the instrument, he intended a delivery of it as a deed and not as an escrow.

The tenant in a real action may rebut the demandant's evidence of seizin, by showing a title in a third party.

One who claims under a deed a part of the land embraced in it, is a competent witness for a tenant in a real action who claims another part of such land under the same; the tendency of his evidence being to prove the due execution of such deed, and both parties claiming by subsequent conveyance.

WRIT OF ENTRY, to recover a tract of land in Newmarket containing about seventy-five acres.

Plea, *nul disseizin.* The parties both claim title under Thomas Cheswell.

The title of the demandants was under the will of Thomas Cheswell, the father, who on the 2d day of August 1840 devised to them in fee the demanded premises, being one half of his land situated on the westerly side of a certain highway, and to his son Joshua Cheswell the remaining half.

It was contended by the demandants, that at the date of his will, Thomas Cheswell owned two thirds of the tract, it being admitted that he had previously conveyed one third of it to his daughters Nancy and Caroline G. Cheswell, by deed dated on September 20, 1825.

The defence was, that on or near the 6th day of October 1825, Thomas Cheswell conveyed the said two thirds of the land to Nancy and Caroline, in trust for four minor children of the said Thomas, and that Nancy and Caroline afterward conveyed to the minors, of whom the tenant in possession is one.

The first wife of the testator died in the month of September 1824, leaving nine children, three of whom were married, and had left their father's house, and six remained at home. Of these six, Nancy and Caroline were of age, and the remaining four, Joshua, Margaretta the tenant, Jane, and John, were minors. The demandants are children of the testator by a second wife.

It appeared in evidence that in the spring of the year 1825 Thomas Cheswell informed his children that he intended to marry again, and to dispose of certain parts of his property by will for their benefit. He said that the three children who were married having already been provided for, he intended to devise the demanded premises to those children who remained at home. After endeavoring to persuade him to relinquish his intentions of marrying again, Nancy and Caroline requested him if he intended to give them this property, to convey it to them by deed, suggesting that if he should marry again, he might be induced to revoke any will which he might make in their favor. He replied that he was willing to convey to them, Nancy and Caroline, one third of the land by deed, but that he wished to enjoy the premises during his life; and that although Nancy and Caroline being of age could make a lease to him of the premises during his life, the other children could not by reason of their minority make

a lease of the portion he should convey to them. He accordingly conveyed one third of the premises to Nancy and Caroline, and said that he should take the advice of Mr. George Sullivan of Exeter, as to the proper mode of conveyance for the benefit of the minor children, and if he could do it in any way that would be stronger than a will, he was willing to do it.

He consulted Mr. Sullivan, and on his return from Exeter, said that Mr. Sullivan advised him to make a conveyance of the two thirds of the land to Nancy and Caroline, in trust for the minor children, and that Nancy and Caroline should then lease the land to him for the term of his life, and should also sign an obligation acknowledging that they held the land in trust, and agreeing to convey it to said minors on the decease of their father.

This preliminary evidence was offered by the tenant as part of the *res gestæ*, and to explain the acts and intentions of Thomas Cheswell at the time of the execution of the instruments. The instruments were all executed in pursuance of this advice. Two of the witnesses testified that after they were signed, witnessed, and acknowledged, Paul Chapman who wrote them said it was necessary that the deed should be delivered; and thereupon handed it to said Thomas Cheswell, who took it and gave it to Nancy, and told her to take it, and Nancy took it and then gave it to said Chapman and told him to take good care of it. Two other witnesses did not remember the remark of Chapman, but testified that Thomas Cheswell handed the deed to Nancy and told her to take it, and she did take it, and gave it to Chapman and told him to take good care of it. All the instruments were left with Chapman, who died previous to the death of Thomas Cheswell. The deed and obligation not being found on search, were not produced, but were proved by parol evidence, which showed them to have been executed October 6, 1825.

The only question for the jury was, whether the deed

of the two thirds to Nancy and Caroline was ever delivered to them, and by them left with said Chapman, or whether the deed was lodged with Chapman by Thomas Cheswell as an escrow, so that he should have the control of it and could take it up if he should afterward wish so to do. This preliminary evidence was offered by the tenant as part of the *res gestæ,* and to explain the acts and intentions of Thomas Cheswell at the time of the execution of the instruments, and particularly the act of handing the deed to Nancy. Nancy and Caroline conveyed the two thirds of the land, after the death of their father, by a joint deed to the four minor children according to their obligation.

To all this preliminary evidence showing what was said and done by Thomas Cheswell before the execution of the deed and other instruments, the demandants objected, but it was admitted by the court.

Joshua Cheswell was one of the minor children for whose benefit the conveyance of the two thirds of the premises was made to Nancy and Caroline. Under this deed he would be entitled to one fourth part of two thirds of the seventy-five acres, or one sixth. By virtue of the will he would have one half of two thirds. He was offered as a witness by the tenant, and objected to by the demandants as interested, but was admitted by the court.

The tenant is entitled under the deed aforesaid to one sixth part of the seventy-five acres; and the demandants contended that she could not disprove their title by the foregoing evidence of title in Joshua, Jane, and John, but the court ruled that the evidence was admissible *for that purpose.*

The verdict was for the tenant, and the demandants moved to set it aside on account of the admission of the evidence, and the ruling of the court as aforesaid.

---

---

*Bell,* and *Tuck,* for the plaintiffs.

*Stickney,* and *Christie,* for the defendant. To the point that the acts and sayings of the grantor were evidence of his intent in passing the deed to the hand of Nancy Cheswell, cited *Murray* v. *E. of Stair,* 2 B. & C. ; 2 Wash. C. C. R. 58; 2 Mass. 452; 5 Con. 555.

That intent is often the criterion to determine if a deed was delivered. Co. Litt. 36 ; 1 Levinz 140; 6 Eng. C. L. 479 ; 4 B. & Al. 440 ; 2 Bing. 229; 1 C. & P. 621; *State* v. *Wallace,* 9 N. H. 517; 11 Pick. 362; 1 Stark. Ev. 38, 39.

GILCHRIST, J. The case shows that on the 6th of October 1825, a deed competent in form to convey from Thomas Cheswell to Nancy and Caroline his daughters, the land claimed by the contending parties in this case, actually passed from the hand of Thomas to Nancy one of the supposed grantees. In order that that tradition of the writing should avail as a delivery of it, there must be shown to have been an intention on the part of the supposed grantor that such should be the character of the act.

The authorities are perfectly clear that acts of an equivocal character may, by evidence of the intent with which they are performed, be made to take effect as a delivery of the deed. While on the other hand, an actual passing of the instrument from the hand of the maker to the party in whose favor its purport runs, is if without the evidence of such intention, a perfectly ineffective act. Or a delivery of a deed may be accomplished by mere words alone on the part of the grantor, if the instrument actually come to the hands of the other party. Co. Litt. 360; Com. Dig., Fait, A 3 ; *Wheelright* v. *Wheelright,* 2 Mass. 447.

It appears to us therefore as a proposition not to be questioned, that some evidence tending to show the intention with which the deceased party Thomas Cheswell

placed the deed in the hand of Nancy Cheswell, was strictly relevant to the issue.

Nor do we see any just objection to the kind of evidence which was introduced for that purpose. We know of no rule which requires evidence adduced to explain the intent of a party in performing an act, to be restricted to his words spoken, or to other demonstrations made concurrently with the performance of the equivocal act. In the ordinary course of business, observation would teach us that persons meet for an object like the one in which these parties were engaged, with so full a knowledge of their common purpose, that precise declarations made at the time explanatory of the character and design of any particular act of either of them, would be somewhat extraordinary.

We are therefore of the opinion that the evidence on that point was properly admitted at the trial.

A question has been made whether the defendant was properly permitted to prove title in Joshua, Jane, and John, in order to rebut the evidence of seizin which the demandants had produced.

If the four persons, including the tenant, in whose favor the trust deed was made by Thomas Cheswell to his daughters in 1825, had a title to the land under that conveyance, then the presumption of seizin resulting in favor of the demandant from the will of Thomas and his possession on the day of his death, was rebutted. Because the will in such case would have been wholly inoperative. *Bailey* v. *March*, 2 N. H. 522; *Berry* v. *Brown*, 5 N. H. 156. These cases are directly in point to sustain the ruling of the court admitting the evidence.

Joshua Cheswell, to whose admission as a witness objection was made on the ground of interest, appears to have a greater interest to defeat the deed, since under the will which the demandant seeks to establish, he would be entitled to a greater share in the land than he could claim

under the deed. But in fact a judgment either way in the present case, would not be evidence for or against him; so that the ground of the objection appears to fail.

We are therefore of the opinion that the rulings of the court at the trial were correct in all the particulars to which the exceptions extend, and that consequently there must be

*Judgment on the verdict.*